UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLAUDE APLIN,                                    Case No.: 18-10703
          Plaintiff,
v.                                               Laurie J. Michelson
                                                 United States District Judge

FAURECIA INTERIOR
SYSTEMS, INC.,                                   R. Steven Whalen
          Defendant.                             United States Magistrate Judge
_____/

## **REPORT AND RECOMMENDATION**

On February 28, 2018, Plaintiff, through counsel, filed a complaint under the

Age Discrimination and Employment Act, the Americans with Disabilities Act,

and Michigan's Elliot-Larson Civil Rights Act.  (ECF No. 1).  Later in the

litigation, Plaintiff's counsel withdrew from the representation, and Plaintiff now

proceeds *pro se*.  Before the Court is Defendant Faurecia Interior Systems, Inc.'s,

("Defendant" or "Faurecia") motion for summary judgment filed on November 15,

2019.  (ECF No. 27), which has been referred for Report and Recommendation

under 28 U.S.C. § 636(b)(1)(B).  For the reasons discussed below, I recommend

that Defendant's motion for summary judgment be **GRANTED**.

I.     **FACTS**

       A.     Faurecia and Plaintiff's Production Line Job

Faurecia designs and manufactures interior systems for automobiles, including dashboards, center consoles, and door panels.  (ECF No. 28-4, PageID.231 - Maurice Foster Declaration, at ¶ 3).  Faurecia's engineers and operational experts determine how many employees to staff at each assembly line workstation, and Faurecia uses this information to plan for and keep track of open positions on lines.  (ECF No. 28-3, PageID.227 – Ericka Stephens Deposition).  Job duties and assignments are rotated amongst operators and are subject to adjustment based on the needs of the production line.  (ECF No. 28-4, PageID.232, ¶ 7-8).

Plaintiff Claude Aplin began working for Faurecia in 2013.  He was 60 years old at the time.  (ECF No. 28-1, PageID.157 – Plaintiff's Deposition).  Plaintiff worked as an operator on the production line manufacturing parts.  Operators are regularly required to lift and move up to 20 pounds, and to bend and twist.  (ECF No. 28-1, PageID.175-76).  Their work is characterized as fast-paced, since operators work under pressure to meet required cycle times.  (ECF No. 28-4, PageID.232, ¶ 7).

B.    Safety Glasses Confrontation

On October 15, 2015, Plaintiff walked out of the breakroom without his safety glasses on.  He quickly realized his mistake and put them on.  Plant manager Glenn Dozier saw Plaintiff without his glasses and told him to keep his safety

glasses on while on the floor.  (ECF No. 28-1, PageID.167-68).  The witnesses and Plaintiff dispute exactly what transpired between Dozier and Plaintiff.  The witnesses whose statements are in the record believe Plaintiff became upset and aggressive toward Dozier.  (*Id.* at PageID.195-96).  Plaintiff recalls feeling disrespected by the way Dozier talked to him.  He told Dozier he was tired and asked Dozier not to disrespect him because he was older.  (*Id.* at PageID.166).  Plaintiff was suspended for three days for the safety glasses violation.  He appealed, but the disciplinary action was upheld.  (*Id.* at PageID.166-68, 199).

Plaintiff believes he was retaliated against for the safety glasses incident.  Specifically, he "assum[es]" that Dozier wanted Plaintiff's supervisor, Mark Harvey, to pressure him by "standing around [him] more after the incident."  (ECF No. 28-1, PageID.186).  It does not appear that Harvey stood around Plaintiff for very long after the incident.

C.    Plaintiff's Leave of Absence and Return to Work

Sometime in early 2016, Plaintiff was diagnosed with stage III kidney disease and hyperglycemia.  Prior to that, he had been diagnosed with hypertension.  These illnesses cause him to tire easily, (ECF No. 28-1, PageID.138), and Plaintiff was having trouble keeping up at work, (*Id.* at PageID.179).  Plaintiff's doctor determined that he needed work restrictions of no lifting and no fast-paced work.  (*Id.* at PageID.139).  These restrictions precluded

Plaintiff from doing his job.  He is not aware of any other job in the plant that he could have done with those restrictions.  (*Id.* at PageID.140-41).  Human Resources Business Partner Maurice Foster testified that there were no light duty jobs at that plant, but there were jobs less strenuous than others.  (ECF No. 28-2, PageID.221).

Because Faurecia did not have a job Plaintiff could do at the plant under those restrictions, they allowed him to take a medical leave of absence that lasted five months.  (ECF No. 28-1, PageID.144; ECF No. 32, PageID.257-58).  He returned to work in September 2016 without restrictions and without requesting any accommodation.  (ECF No. 28-1, PageID.152, 190).  He was not put back on the same production line; that job had been filled in accordance with the Collective Bargaining Agreement.  (ECF No. 28-4, PageID.233-34, ¶ 13).  The agreement provided that when an employee goes on medical leave for more than 30 days, they are taken off the line, and that position will be filled by a new hire.  (ECF No. 28-2, PageID.219-20).  When that employee returns, he or she is placed into the general plant population to be assigned to a new area.  (*Id.*).  Plaintiff was assigned by Human Resources Business Partner Maurice Foster to work as an operator on the Mustang door line, with the same pay and same benefits.  (ECF No. 28-4, PageID.234, ¶ 13; ECF No. 28-1, PageID.145).  D'Andre Clark was Plaintiff's supervisor in this new position.  (ECF No. 28-1, PageID.145).

Plaintiff worked without restriction from his return in September 2016 to his retirement on April 3, 2017.  On March 15, 2017, the Mustang door line was changed.  Faurecia eliminated a workstation and added the duties of that station to two other workstations, including Plaintiff's.  Plaintiff and his co-workers, including younger employees, were required to learn the additional duties on that day.  According to Maurice Foster, Faurecia made this change as part of its "continuing efforts to improve the efficiency of production processes."  (ECF No. 28-4, PageID.234-35, ¶ 16, 17).  While Plaintiff was being trained on the additional work, he told his supervisor D'Andre Clark that he could not do it in the time required because of his age and health.  Mr. Clark encouraged him to continue practicing until he got the job down.  (ECF No. 28-1, PageID.147-48).  Plaintiff left work that day and went on two weeks of FMLA leave.  He then voluntarily retired on April 3, 2017 "because of [his] health."  (ECF No. 28-1, PageID.153, 189).  March 15, 2017 was his last day of work.

Plaintiff disputes the reason behind the workstation change.  He believes the change was made to discriminate against him based on his age and disability because he was required to do work with "the stamina, speed, and workload of a 22-year-old employee."  (ECF No. 28-1, PageID.155).  It is Plaintiff's belief that Faurecia had a duty to accommodate and give older workers less responsibility than younger workers.  (*Id.* at PageID.156).

Also in September 2016, Plaintiff filed a claim with Michigan's Department of Licensing and Regulatory Affairs, claiming that he was denied his vacation pay. (ECF No. 28-4, PageID.242).  The State of Michigan sent Faurecia a letter dated September 21, 2016, informing it of Plaintiff's complaint.  (ECF No. 28-5, PageID.242).  Apparently, it was an administrative error that lead to denying the pay, and Plaintiff was paid in full for the vacation time he was due.  (ECF No. 28-4, PageID.234, ¶ 15).  He believes his then-supervisor Mr. Harvey retaliated against him for filing the claim because Harvey treated him differently starting the day after Faurecia became aware of the complaint, presumably after September 21st.  (ECF No. 28-1, PageID.186-88).  Confusingly, Plaintiff testified that interactions with Mr. Harvey ended in the spring of 2016 and that this retaliation took place before May 2016.  When Plaintiff returned to work in September he worked for Mr. Clark.  (*Id.* at PageID.163).  The letter from the state is clear that the claim was filed in September 2016, not before May 2016.

Plaintiff filed an EEOC charge on May 25, 2017.  He indicated that the discrimination which formed the basis of the charge was race, retaliation, age, and disability.  He alleged that he complained to human resources over the course of his employment about race-based harassment, but nothing was done.[1]  He also complained of the new, additional work duties for which he alleged he was not

---

[1] Plaintiff did not raise race discrimination in his complaint in this case.

given reasonable accommodation for his disability.  He alleged that his employer

assigned him to physically demanding work to force him to quit.  (ECF No. 28-5,

PageID.243).  The EEOC issued a dismissal and notice of rights to Plaintiff.

Plaintiff then brought suit in this Court on February 28, 2018. (ECF No. 1).  In his

complaint, he alleges age and disability discrimination and retaliation in violation

of the Age Discrimination in Employment Act ("ADEA"), the Americans with

Disability Act ("ADA"), and Michigan's Elliot-Larsen Civil Rights Act

("ELCRA").

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail

on a motion for summary judgment, the non-moving party must show sufficient

evidence to create a genuine issue of material fact. *Klepper v. First American*

*Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in

favor of the non-moving party, the Court must determine "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty*

*Lobby, Inc*., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Entry

of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp*., 477 U.S. at 322-23. "[O]n cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *B.F. Goodrich Co. v. U.S. Filter Corp*., 245 F.3d

587, 592 (6th Cir. 2001) (citing *Taft Broadcasting Co. v. United States*, 929 F.2d

240, 248 (6th Cir.1991).

## III.   DISCUSSION

### A.   Administrative Exhaustion

Before a plaintiff may pursue an ADA or ADEA claim of discrimination in

federal court, he first must exhaust the administrative remedies set forth in these

statutes.  *See* 42 U.S.C. § 12117(a) (incorporating the charging requirements of

Title VII, 42 U.S.C. § 2000e–5(e)); 29 U.S.C. § 626(d)(1).  "In a deferral state such

as Michigan, a charge of discriminatory conduct must be filed with the Equal

Employment Opportunity Commission (EEOC) within 300 days after the alleged

unlawful act occurs."  *Schoneboom v. Michigan*, 28 Fed. Appx. 504, 505 (6th Cir.

2002); *see also Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109-10

(2002) (citing 42 U.S.C. § 2000e-5(e)(1)); *Waller v. Diamler Chrysler Corp.*, 391

F. Supp. 2d 594, 599-600 (E.D. Mich. 2005) (citing 42 U.S.C. § 12117(a)).  Thus,

for each act of alleged discrimination that Plaintiff wishes to challenge here, he

was required to file an EEOC charge within 300 days after Defendant engaged in

the allegedly discriminatory acts.  Since Plaintiff filed his EEOC charge on March

25, 2017, any claim of discrimination is time-barred if the discriminatory acts

occurred before July 29, 2016.

The Elliot-Larsen Civil Rights Act (ELCRA) does not have an administrative exhaustion requirement.  Rather, there is a three-year statute of limitations period under ELCRA.  *Marin v. Bloom Roofing System, Inc.*, 795 F.Supp.2d 634, 646 (E.D. Mich. 2011); *Meek v. Michigan Bell Telephone Co.*, 193 Mich. App. 340,343 (1991) ("[t]he statute  of limitations for ELCRA claims is the same three-year period applicable to personal injury actions....").  Plaintiff filed his complaint on February 28, 2018.  Thus, any alleged conduct occurring before February 28, 2015, (of which there appears to be none) is time-barred.

B.      Age and Disability Discrimination

Defendant argues that Plaintiff's age and disability discrimination claims fail as a matter of law.  The ADEA prohibits an employer from failing or refusing to hire, discharging, or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ELCRA prohibits "discriminat[ing] against an individual with respect to employment, compensation, or a term,

condition, or privilege of employment, because of . . . age[.]"[2] Mich. Comp. Laws

§ 37.2202(1)(a). ELCRA age discrimination claims are analyzed under the same

standards as federal ADEA claims. *See Blair v. Henry Filters, Inc.,* 505 F.3d 517,

523 (6th Cir. 2007) (analyzing ADEA and ELCRA claims "together" under the

same standards in a work force reduction case). Accordingly, I will refer to age

discrimination without any distinction between the ADEA and ELCRA.

A plaintiff may use direct or circumstantial evidence to support a

discrimination claim. *Smith v. Chrysler Corp.,* 155 F.3d 799, 805 (6th Cir. 1998).

When a plaintiff establishes discrimination through direct evidence, "the burden

shifts to the employer to prove by a preponderance of the evidence that it would

have made the same decision absent the impermissible motive." *Blair*, 505 F.3d at

523 (citations omitted). If the plaintiff relies on indirect or circumstantial

evidence, courts apply the *McDonnell Douglas* burden-shifting framework. *See*

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973). In such a case, first, the plaintiff must make out a *prima facie*

case of discrimination. "Once the *prima facie* case is made, a defendant may offer

any legitimate, non-discriminatory reason for the employment action, which the

---

[2] The ELCRA does not cover disability discrimination. Michigan's Persons with Disabilities Civil Rights Act (PWDCRA) does, however. M.C.L. §§ 37.1201 *et seq.* Plaintiff did not raise a PWDCRA claim.

plaintiff may rebut by evidence of pretext; however, the burden of proof always remains with the plaintiff." *Hartsel v. Keys,* 87 F.3d 795, 800 (6th Cir.1996).

Defendant asserts that Plaintiff has presented only circumstantial or indirect evidence to support his discrimination claims, and so the *McDonnell Douglas* burden-shifting paradigm applies.  I agree.  Plaintiff has not proffered any direct evidence of age or disability discrimination.  "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003) (citation and internal quotation marks omitted). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

The evidence before the Court on age and disability discrimination is that Plaintiff's job duties were increased in March 2017.  He asserts that younger employees could do the work, but he could not since he was over 60 years old and had health issues.  That fact that Plaintiff could not keep up with the increased tasks, but younger, healthier employees could, is not direct evidence that Faurecia made the workstation changes at least in part to discriminate against Plaintiff for his age and disability.  Further, the evidence demonstrates that this was not the only time Faurecia eliminated or otherwise changed a workstation.  Thus, the

change in workstation alone is not direct evidence of discrimination.  With only circumstantial evidence in support of his case, the burden-shifting framework applies, and Plaintiff must present a *prima facie* case of age and disability discrimination.

      1.    *Prima facie* Case

The *prima facie* elements of an ADEA and ELCRA age discrimination claim are as follows: (1) he was a member of the protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the particular position; and (4) was replaced by a younger worker. *Barnes v. GenCorp.,* 896 F.2d 1457, 1465 (6th Cir.1990).   The *prima facie* elements of a disability discrimination claim are: (1) that he is disabled, (2) that he is otherwise qualified for the job, with or without reasonable accommodation, (3) that he suffered an adverse employment action, (4) that his employer knew or had reason to know of his disability, and (5) either the position remained open; he was replaced by a non-disabled person; or similarly-situated non-disabled employees were treated more favorably. *Whitfield v. Tennessee,* 639 F.3d 253, 259 (6th Cir. 2011); *Stanciel v. Donahoe,* 570 Fed. Appx. 578, 581 (6th Cir. 2014).  As there is considerable overlap in elements, I will discuss both the age and disability claims together.

Defendant does not contest that Plaintiff was a member of a protected class (age) and that he was disabled.  Of the remaining factors, however, there is no

dispute of material fact, and no reasonable jury could conclude on the evidence

that Plaintiff met his burden to establish a *prima facie* case.

First, there is no evidence that Plaintiff suffered an adverse employment

action.  The Sixth Circuit defines an adverse employment action as a "materially

adverse change in the terms and conditions of a [plaintiff]'s employment." *White v.*

*Burlington N. & Sante Fe Ry. Co.,* 364 F.3d 789, 795 (6th Cir. 2004). In both age

and disability discrimination cases, courts evaluate the following factors:

> [A] materially adverse change in the terms and
> conditions of employment must be more disruptive than a
> mere inconvenience or an alteration of job
> responsibilities. A materially adverse change might be
> indicated by a termination of employment,[3] a demotion
> evidenced by a decrease in wage or salary, a less
> distinguished title, a material loss of benefits,
> significantly diminished material responsibilities, or
> other indices that might be unique to a particular
> situation.

*Reese v. State of Michigan Family Independence Agency*, 31 Fed. Appx. 172, 174

(6th Cir. 2002) (quotations marks and citations omitted).

The adverse employment action alleged in this case is Plaintiff's

reassignment with increased job duties beginning (and ending for him) on March

15, 2017.  "Reassignments and position transfers can qualify as adverse

---

[3] Plaintiff does not claim in his complaint, nor argue in his response, that he
suffered a constructive discharge.  Rather, the facts are clear that he voluntarily,
and without any pressure from anyone at Faurecia, chose to retire for health
reasons.  (ECF No. 28-1, PageID.153).

employment actions, particularly where they are accompanied by [adverse] salary or work hour changes." *Spees v. James Marine, Inc.,* 617 F.3d 380, 391 (6th Cir. 2010) (citing *Kocsis v. Multi-Care Mgmt, Inc.,* 97 F.3d 876, 885–86) (6th Cir. 1996) (internal quotation marks omitted)); *cf. Yates v. Avco Corp.,* 819 F.2d 630, 638 (6th Cir.1987) ("[R]eassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims.").

Plaintiff's salary, benefits, and work hours did not change with the change in workstations.  However, "even if a reassignment is not paired with a salary or work-hour change, it can nonetheless be considered an adverse employment action where there is evidence that the employee received a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* (citing *Kocsis,* 97 F.3d at 886) (internal quotation marks omitted).  "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 59, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (citation omitted).

A reasonable person in Plaintiff's position would not view the workstation change to be materially adverse.  Plaintiff claims that the job became harder—that

he could not do the job fast enough, while the younger workers could. But an

increase is workload, without more, is not an adverse employment action. *See,

e.g.*, *Blackburn v. Shelby Cty.*, 770 F. Supp. 2d 896, 922 (W.D. Tenn. 2011)

("Plaintiff's loss of her supervisory responsibilities and her increased case load and

job responsibilities are not actionable as adverse employment actions; there was no

difference in base pay and benefits between the Detectives Division and the

Narcotics Division, Plaintiff's rank remained the same, and Plaintiff presented no

competent evidence that the position in the Detectives Division was objectively

less prestigious."); *Workneh v. Pall Corp.*, 897 F. Supp. 2d 121, 135 (E.D.N.Y.

2012) ("Increased responsibilities and excessive scrutiny, without more, do not

constitute an adverse employment action."); *Courts v. Correct Care Sols., LLC*,

2019 WL 3425892, at *5 (M.D. Tenn. July 30, 2019), *report and recommendation*

*adopted*, 2019 WL 5261342 (M.D. Tenn. Oct. 17, 2019) ("Plaintiff's increase [in

job responsibilities] was not more than "an alteration of job responsibilities" and

does not suffice as materially adverse."); *Jones v. Donahoe*, 2013 WL 4042039, at

*3 (W.D. Ky. Aug. 8, 2013) ("A substantial increase in work load alone does not

qualify as a materially adverse change."). No reasonable person could conclude on

these facts that the increase in job duties constitutes an adverse employment action

where Plaintiff's employment was otherwise unchanged, and there were no other

surrounding circumstances that raise a question of discriminatory animus towards Plaintiff.

Second, Plaintiff admits that he was not qualified to do the job once the duties had been increased.  In addition to his admission, he also generally discussed difficulty he had when he tried to learn to do the additional tasks, which leads to the conclusion that he could not complete the tasks.  His testimony is the only evidence one way or the other about his qualifications to do the job.  He makes the blanket assertion in his *unsworn* response brief that he was qualified, (ECF No. 32, PageID.250), but this statement is not evidence that can defeat summary judgment.  When asked under oath during his deposition (at which he was represented by counsel), he stated that he could not do the job.[4]  Plaintiff states twice in his response that he has video evidence, yet he did not produce any video along with his response.  (ECF No. 32, PageID.251-52).

 Plaintiff also testified that there was no accommodation that would have allowed him to perform fast-paced work (ECF No. 28-1, PageID.140), a

_____

[4] The principle is clear that a party who has been examined at length at deposition cannot create a genuine issue of material fact by later submitting an affidavit that contradicts previously sworn testimony. *Penny v. United Parcel Serv*., 128 F.3d 408, 416 (6th Cir.1997); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986). It is equally true, if not more so, that a party cannot create a genuine issue of fact through unsworn statements in a response brief that contradict previously sworn testimony.  Consequently, Plaintiff's statement in his response that he was qualified to do the job, or any other statement in the response, does not work to create a genuine issue of fact in this matter.

requirement of the job (ECF No. 28-4, PageID.232, ¶ 7).  In sum, the evidence

demonstrates that Plaintiff was unable to do the work, and thus not qualified for the

work.  Failure to show he was qualified to do the job, with or without

accommodation, defeats the *prima facie* case.  *See Williams v. Nike TN, Inc.*, 2017

WL 4124050, at *3 (6th Cir. June 15, 2017) ("Because Williams does not counter

the evidence that she is permanently unable to perform the essential functions of

the position and that no accommodation would allow her to do so, she fails to

establish a prima facie case of disability discrimination.").

Third, the evidence suggests that Faurecia had no reason to know that

Plaintiff's disability precluded him from performing the new job duties.  Faurecia

was aware of Plaintiff's medical conditions in May 2016 after he presented a

document from his physician indicating that he could not do fast-paced work or do

any lifting.  But before he returned to work, his physician provided an updated

statement indicating that Plaintiff could work without restriction.  Plaintiff then

worked without incident, and without restriction or any request for

accommodation, until March 15, 2017, the day his job duties were increased.

Given that he returned in September 2016 with a physician's note that he could

work without restriction, and there were no problems with Plaintiff's performance,

there was no basis on which Faurecia could have concluded that Plaintiff was

disabled such that he could not perform the new tasks.

Finally, there simply is no evidence that Plaintiff was replaced by a younger or non-disabled employee after he retired.  And, there is no evidence that he was treated less favorably than non-disabled or younger employees.  Again, Plaintiff makes the unsupported assertion in his unsworn response that he was treated less favorably.  But the facts, rather than unsworn statements in his argument, do not support this.  Plaintiff testified that when the Mustang door line workstations changed, it was not just he who had to learn to do two jobs.  Other workers on the line had to as well, although they were younger.  He believes he was treated less favorably because he was not given a lighter-duty job in light of his age and disability.  His position rings more as an assertion that he should have been treated more favorably than younger, able-bodied workers, not that he was treated less favorably.

Defendant cites to Sixth Circuit case law for the proposition that the ADEA was not intended to entitle older employees to *better* treatment than younger employees.  *See Slenzka v. Landstar Ranger, Inc.*, 122 Fed. Appx. 809, 813 (6th Cir. 2004) ("The ADEA, however, 'does not require an employer to accord special treatment to employees over forty years of age[, but to treat] an employee's age ... in a neutral fashion.'") (quoting *Parcinski v. Outlet Co.,* 673 F.2d 34, 37 (2d Cir.1982)); *Allen v. Diebold,* 33 F.3d 674, 677 (6th Cir.1994). ("The ADEA was not intended to protect older workers from the often harsh economic realities of

common business decisions and the hardships associated with corporate reorganizations...."). Similarly, the ADA does not require that a disabled individual be afforded preferential treatment. *See e.g., Hedrick v. Western Reserve Care System*, 355 F.3d 444, 459 (6th Cir. 2004) (citing *Daugherty v. City of El Paso,* 56 F.3d 695, 700 (5th Cir. 1995) ("we do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled. It prohibits employment discrimination against qualified individuals with disabilities, no more and no less."); *Terrell v. USAir,* 132 F.3d 621, 627 (11th Cir. 1998) ("We cannot accept that Congress, in enacting the ADA, intended to grant preferential treatment for disabled workers."). Consequently, Plaintiff's assertion that he should not have been given the additional tasks because he was older and disabled does not aid him in establishing the *prima facie* case.

Having failed to establish the *prima facie* case, Plaintiff's ADEA, ELCRA, and ADA age and disability claims fail as a matter of law.

### 2. Legitimate, Nondiscriminatory Purpose and Pretext

Even were the Court to conclude that Plaintiff made out a *prima facie* case of discrimination, he has proffered no evidence to rebut Defendant's position that it had a legitimate, non-discriminatory purpose behind Plaintiff's reassignment to the Mustang door line and the workstation change. The evidence brought forth by

Faurecia is as follows.  When Plaintiff returned from his medical leave in September 2016, he was placed on the Mustang door line, a different production line from before he went on leave pursuant to the Collective Bargaining Agreement between Faurecia and Plaintiff's union.  (ECF No. 28-2, PageID.219-20; ECF No. 28-4, PageID.233, ¶ 13).  On March 15, 2017, Faurecia eliminated a workstation on the line and required Plaintiff and another line worker to share the duties of the eliminated station, in addition to the duties of their station as they were originally.  Plaintiff does not dispute that Faurecia regularly assesses workflows in the plant for inefficiency, and regularly eliminates or changes workstations to increase efficiency.  (*See* ECF No. 28-4, PageID.134-35, ¶ 16).  According to Faurecia and its HR Business Partner Maurice Foster, in that instance on March 15th, it changed the Mustang door line workstations to make the line more efficient; there was no discriminatory purpose behind the action.  Faurecia supports its position with the affidavit of Mr. Foster.  (*Id.*).

Having come forward with a legitimate, non-discriminatory reason for the workstation change, it would then turn to Plaintiff to establish that the reason is pretextual.  To establish pretext, a plaintiff must show that: "(1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate [the challenged action], or (3) they were insufficient to motivate discharge."  *Blizzard v. Marion Technical College*, 698 F.ed 275, 285 (6th Cir. 2012).  Despite Plaintiff's

assertions otherwise, he has not shown that there is a dispute of material fact as to whether Faurecia's reason is pretextual.

There is no basis on which to conclude that the stated reason has no basis in fact. The factual basis for the change is Faurecia's continued efforts to increase efficiency. Notably, Plaintiff does not contest that Faurecia often makes similar workstation changes to increase efficiency.

As for whether efficiency did not actually motivate the change or was an insufficient motive for the change, the evidence is as follows. Plaintiff asserts that "[Faurecia] knew a man of [his] age and disability could not perform" the increased tasks. (ECF No. 32, PageID.251). This statement is unsworn and brought forth only in Plaintiff's response brief, so it cannot properly be considered rebutting evidence. In his EEOC complaint, Plaintiff wrote that Faurecia changed the job duties to be more demanding "to force [him] to quit." (ECF No. 28-5, PageID.243). He signed the EEOC document under penalty of perjury. Further, he testified at deposition that he believed being made to complete the additional tasks was age and disability discrimination. (ECF No. 28-1, PageID.155).

Viewing the evidence in the light most favorable to Plaintiff, his belief or speculation does not rebut Defendant's evidence of a legitimate, non-discriminatory reason. There is no *evidence* that efficiency did not actually motivate the change, especially in light of Plaintiff's apparent agreement that

Faurecia makes these kinds of changes in the normal course of business.  And, there is no evidence, or even speculation, that efficiency was an insufficient reason to make the workstation change.

At the summary judgment stage, the Court does not make credibility determinations.  In this instance, however, it is not a question of competing evidence.  Defendant proffered evidence demonstrating that the challenged action—changing the workstations on the Mustang door line—was legitimate and non-discriminatory.  Plaintiff attempts to rebut this reason with nothing more than a denial of the legitimate reason. He offers no evidence of a nexus between his age and disability and the workstation change.  This lack of evidence is especially striking in light of the fact that workstations are changed with some regularity at Faurecia and other employees on the line had to learn the additional tasks as well as Plaintiff.  Plaintiff's mere denial of Defendant's reason does not create a triable issue of fact.  As stated by the Supreme Court, "[i]t is not enough to disbelieve the employer, the factfinder must believe the plaintiff's explanation of intentional discrimination." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 146–47 (2000).  *See Gant v. Genco I, Inc.*, 274 Fed. Appx. 429, 435 (6th Cir. 2008); *Haughton v. Orchid Automation*, 206 Fed. Appx. 524, 532 (6th Cir. 2006) ("Plaintiff cannot rely on mere denials of Defendant's articulated reasons to show they had no basis in fact, but must produce some evidence in support of his denial

to survive summary judgment."); *Mitchell v. Toledo Hospital,* 964 F.2d 577, 585 (6th Cir. 1992) ("[T]he plaintiff's denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient for a race discrimination claim to withstand a motion for summary judgment."); *see also Frazier v. USF Holland, Inc*., 250 Fed. Appx. 142, 148 (6th Cir. 2007) ("To survive a summary judgment motion, a plaintiff must put forward more than speculations or intuitions."). Under Rule 56 of the Federal Rules of Civil Procedure, if the nonmoving party does not respond with specific facts, by affidavit or otherwise, showing that there is a genuine issue for trial, then "summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). Plaintiff submitted nothing that would create a genuine issue as to a material fact in response Defendant's legitimate, nondiscriminatory reason.

For the foregoing reasons, Defendant is entitled to summary judgment on the age and disability discrimination claims under the ADEA, the ADA, and the ELCRA.

C.     ADA Failure to Accommodate

Plaintiff has also brought a failure to accommodate claim. An employer discriminates against an otherwise qualified individual on the basis of a disability when it does not make "reasonable accommodations to the known physical or mental limitations" of the individual unless the employer can demonstrate that the

accommodation would "impose an undue hardship on the operation" of its business. 42 U.S.C. § 12112(b)(5)(A). A failure to accommodate claim "unavoidably 'involve[s] direct evidence (the failure to accommodate) of discrimination' because the employer necessarily relied on the worker's disability in making decisions." *Cash v. Siegel–Robert, Inc.,* 548 Fed. Appx. 330, 334, 2013 WL 6231791, at *4 (6th Cir. Dec. 3, 2013) (quoting *Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 868–69 (6th Cir. 2007)). Accordingly, the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) does not apply.

To establish a failure to accommodate claim, Plaintiff must show that (1) he was disabled within the meaning of the ADA; (2) he was otherwise qualified for the position, with or without reasonable accommodation; (3) Defendant knew or had reason to know about his disability; (4) he requested an accommodation; and (5) Defendant failed to provide the necessary accommodation. *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018) (citing *Deister v. Auto Club Ins. Ass'n*, 647 Fed. Appx. 652, 657 (6th Cir. 2016)).  Plaintiff must establish that he "requested and was denied" a reasonable accommodation. *Lockard v. Gen. Motors Corp.,* 52 Fed. Appx. 782, 786 (6th Cir. 2002).

The failure to accommodate claim fails because Plaintiff did not request an accommodation.  It is the plaintiff's burden to show he requested an

accommodation for his disability. *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042 (6th Cir. 1998) (In an employment case brought under the ADA, the court reiterated that "the initial burden of requesting an accommodation [is] on the employee."). When Plaintiff returned to work in September 2016, he presented a physician's note stating that he could work without restriction. (ECF No. 28-1, PageID.190). Plaintiff testified at his deposition that when he returned, and thereafter, he did not ask for accommodation. (*Id.* at PageID.152). Specifically, he testified as follows:

> Q. [D]id you request any accommodation of the company to allow you to work [in the newly-created position]?
> A. No.
> Q. [D]id you request any accommodation whatsoever from the company after you returned to work in late 2016 from your extended leave of absence?
> A. No. No, I did not.

Instead, he retired. Failure to request an accommodation defeats his failure to accommodate claim. *Buescher v. Baldwin Wallace Univ.*, 86 F. Supp. 3d 789, 806 (N.D. Ohio 2015) ("[S]he did not request an accommodation for her disability and there can be no failure to accommodate.").

The claim fails for the additional reason that, as discussed above, Plaintiff was not qualified to do the work and Defendant did not have reason to know of the disability that would affect Plaintiff's ability to perform the additional tasks.

D.   <u>Retaliation</u>

The specifics of Plaintiff's retaliation claim are not clear from the complaint, and Plaintiff did not respond to Defendant's argument on this claim.  During his deposition, he put forth two instances during which he believes he was retaliated against.  The first came after the safety glasses incident on October 15, 2015. Plaintiff believes he was retaliated against after the interaction with Dozier and the three-day suspension.  Specifically, he testified that he assumed Dozier wanted Plaintiff's direct supervisor Mark Harvey to pressure him because Harvey began "standing around [him] more after the incident."  (ECF No. 28-1, PageID.186).

The second alleged instance of retaliation came after Plaintiff filed a wage claim with the Department of Licensing and Regulatory Affairs in September 2016, asserting that his vacation pay was wrongly withheld.  Upon investigation, Faurecia discovered an administrative error and corrected it by paying Plaintiff the vacation pay in full.  The day after Faurecia became aware of the claim, his supervisor Mr. Harvey "treated [him] different[ly]."  (ECF No. 28-1, PageID.187).

The ADEA, ADA, and ELCRA require satisfaction of the same elements.[5] In order to state a retaliation claim under either of these statutes, Plaintiff must show: (1) that he engaged in protected activity; (2) that Faurecia had knowledge of

---

[5] The allegation of retaliation that occurred in October 2015 is barred because of Plaintiff's failure to timely exhaust under the ADA and ADEA.

27

his protected conduct; (3) that Faurecia took an adverse employment action towards him; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Fox v. Eagle Distributing Co., Inc.*, 510 F.3d 587, 591 (6th Cir. 2007) (ADEA retaliation); *Rorer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (ADA retaliation); *In re Rodriquez*, 487 F.3d 1001, 1011 (6th Cir. 2011) (ELCRA retaliation).

Defendant argues that Plaintiff did not engage in protected activity because neither of the two alleged instances of retaliation were in any way related to a claim of age or disability discrimination. Plaintiff does not contest the argument or in any way support his retaliation claim.

Neither statute creates a cause of action for just any workplace retaliation; rather, they protect individuals for engaging in activity covered by the statute. "Protected activity typically refers to action taken to protest or oppose a statutorily prohibited discrimination." *Tri-Cities Holdings LLC v. Tennessee Admin. Procedures Div.*, 260 F. Supp. 3d 913, 927 (E.D. Tenn. 2017), *aff'd*, 726 Fed. Appx. 298 (6th Cir. 2018) (quoting *Rorer v. City of Stow*, 743 F.3d 1025 (6th Cir. 2014. Thus, as a general proposition, ADEA and ADA retaliation would require some protected activity related to age or disability discrimination, respectively.

In this case, there is no clear connection between Plaintiff's age and disability and the safety glasses and wage dispute incidents. There are no facts to

suggest that Dozier approached Plaintiff and told him to leave his safety glasses as an act of age or disability discrimination.  Plaintiff's protest to Dozier for the perceived disrespect—asking Dozier to be respectful towards him because he was older than Dozier—was not a protest of statutorily prohibited discrimination. Neither statute at issue prohibits a supervisor from telling an employee to keep their safety glasses on.  *See, e.g., Fox,* 510 F.3d at 591 (finding that "in order for [the plaintiff's] comments to [a supervisor] to be deemed protected activity under the ADEA, [the plaintiff] must have referenced alleged acts of age discrimination by [the defendant]").  Similarly, Plaintiff has not put forth evidence that his vacation pay was withheld for some discriminatory purpose.  He filed the wage claim asserting only that his pay had been erroneously withheld, not in opposition to or protest of prohibited discrimination.[6]  Thus, there is no question of material fact whether Plaintiff engaged in protected activity.  On the contrary, is essentially undisputed that Plaintiff did not engage in protected activity.   Since Plaintiff did

---

[6] In his complaint, Plaintiff alleges that "Management began to target me by failing to pay out monies owed[.]"  (ECF No. 1, PageID.5).  This is likely an allegation about the vacation pay issue.  This allegation is not borne out in the record. Plaintiff's later sworn deposition testimony about the wage issue is that his supervisors either didn't have documentation about vacation time or that documents showed plaintiff was "AWOL."  Since his supervisors and human resources were unable to resolve the issue, he called "wage and hour" and filed a complaint.  (ECF No. 28-1, PageID.174).  Plaintiff does not dispute Maurice Foster's averment that it was administrative error that prevented him from being paid initially.

not engage in protected activity, Plaintiff cannot establish the first element of his

retaliation claim, and Defendant is entitled to summary judgment on the claim.

      E.    <u>Hostile Work Environment</u>

In its motion, Defendant also challenges the viability of a hostile work

environment claim, apparently in an abundance of caution. Upon reviewing the

complaint, however, I am unable to discern either a distinct claim of hostile work

environment or any allegations in support of such a claim. Rather, Plaintiff alleges

only that he left work in May 2016 for health reasons and returned in September

only after getting a note of no restrictions from his doctor.  He alleges age and

disability discrimination for the lack of accommodation.  In addition, Plaintiff did

not address hostile work environment in his response, nor did he identify any

evidence that would raise a question of material fact on that claim

## IV.   CONCLUSION

I recommend that Defendant Faurecia's Motion for Summary Judgment

[ECF No. 27] be **GRANTED**.

Any objections to this Report and Recommendation must be filed within 14

days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D.

Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any

further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d

435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United*

*States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *and Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Date: July 30, 2020                                 s/R. Steven Whalen
                                                    R. Steven Whalen
                                                    United States Magistrate Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on July 30, 2020 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager